NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALLURE HOME CREATION CO., Inc., a New Jersey corporation : : : : Plaintiff, : : v. : : ZAK DESIGNS, INC., a Washington corporation : : : Defendant. : : | Civil Action No. 03-193(JWB)<br><br>**O P I N I O N** |

**APPEARANCES:**

    LOWESTEIN SANDLER, P.C.
    By: Stephen R. Buckingham, Esquire
    65 Livingston Avenue
    Roseland, NJ 07068
    (Attorneys for Plaintiff)

    EPSTEIN, BECKER & GREEN, P.C.
    By: James P. Flynn, Esquire
    Two Gateway Center, 12th Floor
    Newark, NJ 07102-5003
    (Attorneys for Defendant)

**BISSELL**, Chief Judge

On July 29, 2004, this Court conducted a hearing for the purpose of construing the claims of U.S. Patent No. 6,155,411, the focus of the present infringement action between the parties. After receiving proposed findings of fact and conclusions of law

and replies from each side, and after reviewing the record and exhibits herein, the Court issues the present opinion.

This Court acknowledges and applies the following rules of law regarding the construction of claims issue. In doing so, the Court quotes liberally from the standards as expressed recently by the Honorable Judge William G. Bassler of this Court in Daiichi Pharm. Co., Ltd. v. Apotex, Inc., 03-937 (WGB) (Opinion August 8, 2005).[1]

I. **Legal Framework**

A patent infringement action involves two steps: (1) the claims must be properly construed in order to determine their scope and meaning, and (2) the claims as properly construed must be compared to the accused device or process. See CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1152 (Fed. Cir. 1997), cert. denied, 522 U.S. 1109 (1998). The first step is a threshold issue of law for this Court to decide. See Markman v. Westview Instr., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). At this juncture in this case, only the first step will be addressed.

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled

---

[1] Judge Bassler has submitted this decision for publication.

the right to exclude." Phillips v. AWH Corp., No. 03-1269, 03-1286, 2005 WL 1620331, at *4 (Fed. Cir. July 12, 2005) (internal quotation marks omitted). Accordingly, a court, in construing the terms of a patent, should look first to the language of the claim itself. Vitronics Corp. v. Conceptronics, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The words of a claim "are generally given their ordinary and customary meaning." Phillips, 2005 WL 1620331, at *5 (internal quotation marks omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id.

The ordinary meaning of a term cannot, however, be construed in a vacuum; rather, a court must "must look at the ordinary meaning in the context of the written description and the prosecution history." Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005). The court does so to "determine whether the inventor used any terms in a manner inconsistent with their ordinary meaning." Vitronics, 90 F.3d at 1582.

Recently, the Federal Circuit clarified the importance of using the specification and other intrinsic evidence to determine the meaning of a claim. See Phillips, 2005 WL 1620331, at *13

(stating that "the specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication"). Similarly, a patent's prosecution history may clarify the meaning of a claim, particularly in light of exchanges between the patent applicant and the PTO. See Northern Telecom, Ltd. v. Samsung Elec. Co., 215 F.3d 1281 (Fed. Cir. 2000). Thus, the claim language, the specification, and the patent prosecution history--collectively referred to in patent law as the "intrinsic record"--are the foundation of claim construction analysis and will, in most instances, resolve any dispute regarding the interpretation of a claim term. Vitronics, 90 F.3d at 1582-83 ("Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.")

Only in the rare circumstance in which there is still doubt as to the meaning of a claim after the court has examined the intrinsic record, should a court look to extrinsic evidence such as treatises, technical references, and expert testimony, to resolve any doubts or ambiguities. Id. at 1583.

**II. Analysis**

In this case at bar, the Court has determined that examination of the claims (particularly Claim 1 which serves as a basis for all claims) and the specification within Patent

6,155,411 ("the '411 patent") is adequate to construe that patent. Although in the <u>Markman</u> hearing the Court received extrinsic evidence, it has determined that it is unnecessary to resort to that evidence in reaching its decision.

The Court annexes to this Opinion, and incorporates by reference, copies of PM2 (altered to reflect the Court's decision) and PM3, an enlargement of Figure 1A to the patent, the most significant drawing. PM2 has been altered to reflect the Court's adoption of the construction of the Claims in suit as tendered by the parties.[2] All undisputed constructions are adopted. In some instances the Court has adopted Plaintiff's construction and in other cases the Defendant's, where those constructions vary.

The crux of the present dispute is whether, under the '411 patent, the two vessels are preformed and then assembled ("fused") into one product or whether the patent also encompasses a product produced as a single entity. The Court concludes that the claims of the patent are limited to a product assembled from two preformed vessels.

Claim 1 speaks of a first vessel and a second vessel "wherein the material of the first vessel is fused with the material of the second vessel," thereby strongly implying the

---

[2] The claims at issue, as reflected on PM2, are claims 1, 3, 12-15, 22 and 27.

5

existence of two separate objects prior to the fusion process. Figure 1A, as color coded and offered by Plaintiff itself as Exhibit PM3 (attached), shows the fusion of the bottom of the first vessel and the top of the second. Even if the first vessel were preconstructed without a bottom and then fused to the top cover of the second vessel, each vessel would begin life as a separate object. So too if the covered bottom of the first vessel were fused to an open second vessel thereby providing a top for the latter. Finally, several excerpts from the '411 patent specification also supports the conclusion that separate vessels are fused together to create the patented product:

> "Thus the invention can relate to a container comprising a first open vessel and a second sealed vessel."  '411 Patent, 1:47-48
>
> "The second vessel can be a top closure for the first vessel, either removable therefrom or affixed thereto; or the second vessel can be a base attached to the first vessel."  Id. at 1:52-54.
>
> ". . . it is believed that heretofore a tumbler and/or container has not been combined with such sealed container."  Id. at 2:9-11.
>
> "Thus the invention can provide a container comprising a first vessel and second vessel wherein the first and second vessels are connected."  Id. at 2:59-61.

The Court realizes that the specification cannot be employed to limit a patent claim; however, the Court has not done that here. The specification enhances the plain meaning and

6

permissible conclusion that the '411 patent speaks to a product resulting from the "fusing" of two separately constructed vessels not a container produced as a single piece from the outset.[3]

An Order reflecting the claims construction, also employing attached Exhibit PM2, accompanies this Opinion.

>                         /s/    John W. Bissell
>                              JOHN W. BISSELL
>                                Chief Judge
>                         United States District Court

DATED:  August 10, 2005

---

[3] To the extent that any figures submitted as part of the '411 patent might seem to embody a product not assembled from two separate vessels, they would not be accurate examples of the patent's Claims.